UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 20-24148-CIV-ALTONAGA/TORRES

CHARTER CLUB INC.

    *Plaintiff,*

v.

LEXINGTON INSURANCE COMPANY,

    *Defendant.*
_____/

**PLAINTIFF, CHARTER CLUB, INC.'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S DEMAND FOR A DECLARATION COMPELLING APPRAISAL**

Plaintiff, Charter Club, Inc. ("Charter Club") opposes Defendant, Lexington Insurance Company's ("Lexington") Motion to Dismiss Plaintiff's Demand for a Declaration Compelling Appraisal [D.E. 14], and in support states:

**INTRODUCTION**

This is a commercial property insurance dispute arising from Hurricane Irma. Charter Club is a residential condominium association, occupying a 22-story building on the shores of Biscayne Bay in Midtown Miami. Charter Club timely reported a Hurricane Irma claim to its property insurer, Lexington. Lexington investigated, eventually concluding that while Charter Club suffered damage caused in whole or in part by Hurricane Irma, the amount of Charter Club's loss fell below the policy's deductible.

Charter Club disagreed, and retained a public adjuster to conduct its own investigation. Eventually Charter Club, with the assistance of its adjuster GlobalPro, Inc., submitted a sworn statement in proof of loss in an amount far greater than what Lexington agreed was owed.

Lexington investigated further, eventually demanding an examination under oath and requesting a litany of documents from Charter Club.

In response, Charter Club informed Lexington that it was in the process of retaining counsel. Armed with this information, and as Dade County was in the first wave of the COVID-19 pandemic and state and local officials were implementing shut down orders, Lexington unilaterally scheduled an in-person examination under oath ("EUO"). When Charter Club did not appear, Lexington unilaterally rescheduled the examination, then denied coverage.

Once Charter Club retained counsel, it offered to produce the requested documents and sit for the requested EUO, and asked that Lexington reopen the claim and withdraw its denial. Lexington refused Charter Club's offers and request.

Left with no choice, Charter Club filed this action. Charter Club's complaint sounds in two counts. Count I seeks a declaratory judgment that (1) Charter Club has not materially breached any of the applicable post-loss conditions set forth in Lexington's policy, as informed by Florida law; (2) alternatively, if a material breach occurred, Lexington has not been prejudiced thereby; and (3) the parties must submit to appraisal as set forth in Lexington's policy as governed by Florida law, with the court retaining jurisdiction to enter orders necessitated by the appraisal process and to confirm any appraisal award. D.E. 1 at 9-10 (WHEREFORE clause). Count II is expressly pled in the alternative to Count I, and seeks damages for breach of contract if appraisal is somehow deemed inappropriate. Indeed, Charter Club has offered to abate Count II pending judicial resolution of Count I. *Id.* at 10-11.

Lexington now moves to dismiss Charter Club's request for a declaration requiring Lexington to proceed to appraisal. Lexington argues that appraisal is not ripe, because questions of coverage must first be resolved before a claim may proceed to appraisal, and that because these

questions have not been resolved, Charter Club's request for declaratory relief hinges on a hypothetical or contingent set of facts.

Lexington's motion is the functional equivalent of a motion to strike sub-paragraph (c) of Count I's prayer for relief, and should be denied. Charter Club's complaint alleges (1) a disagreement between the parties concerning the amount of Charter Club's Hurricane Irma loss, (2) Charter Club has substantially complied with its post-loss obligations, and (3) a request for appraisal was made and Lexington refused.

Lexington invites error by asking the Court to weigh the credibility of these allegations on a motion to dismiss. But, it is well-settled that the only relevant question on motion to dismiss a claim for declaratory judgment is whether the plaintiff has plausibly pled the factual basis for the declaration sought, not whether the plaintiff is ultimately entitled to the declaration sought. Charter Club plausibly does so.

## FACTUAL ALLEGATIONS AS PLED IN CHARTER CLUB'S COMPLAINT[1]

Charter Club suffered a multi-million dollar property loss due to Hurricane Irma. *See* Compl., D.E. 1 at ¶ 1. At the time of loss the building was insured under a Lexington commercial property policy. *Id.* at ¶ 11. Under the policy, a party may request that a claim proceed to appraisal if there is a disagreement concerning the value of the property or amount of loss. *Id.* at ¶ 17.

---

[1] A rule 12(b)(6) motion tests the sufficiency of these allegations, which must be (1) considered in their entirety, along with any incorporated documents or exhibits and (2) taken as true with inferences drawn in Charter Club's favor. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007); *VVIG, Inc. v. Alvarez*, No. 18-23109-CIV, 2019 WL 5063441, at *2 (S.D. Fla. Oct. 9, 2019) (Altonaga, J.). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim is plausible on its face when the plaintiff alleges enough facts to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

After conducting an investigation, Lexington determined that while the property suffered a covered loss, the amount of that loss fell below the policy's deductible and no payment was owed. *Id.* at ¶¶ 22-22. Charter Club disagreed with Lexington's determination, and hired the GlobalPro public adjusting firm to conduct an independent investigation and to quantify the loss. *Id.* at ¶ 25.

GlobalPro submitted an estimate and corresponding supporting documentation showing the loss far exceeded the policy's deductible and payment was owed. *Id.* Lexington subsequently inspected the property again and hired consultants and engineers. *Id.* at ¶¶ 27-29. But its evaluation did not change. *Id.* Lexington then requested a slew of documents from Charter Club and unilaterally scheduled an examination under oath during the height of a global pandemic. *Id.* at ¶ 33.

Charter Club never refused these requests; instead, Charter Club notified the insurer that it was in the process of obtaining counsel. *Id.* at ¶¶ 34-37. Lexington went forward with the unilaterally scheduled EUO anyway, despite never receiving confirmation Charter Club could attend. *Id.* When Charter Club did not appear, Lexington scheduled another in-person examination to occur when Miami-Dade County stay-at-home orders prohibiting non-essential workers from conducting non-essential business were in effect. *Id.* at ¶ 36. Shortly thereafter, Lexington denied coverage claiming the insured's failure to attend the EUOs and to produce certain documents constituted a breach of the policy's post-loss conditions. *Id.* at ¶ 38.

Immediately upon retaining counsel, Charter Club requested that Lexington withdraw its denial, and afford Charter Club the opportunity to submit to an EUO and to make its books and records available. *Id.* at ¶ 39. Charter Club also notified Lexington it wished to invoke appraisal pursuant to the policy. *Id.* at Ex. B.

Lexington rejected these requests and re-affirmed its denial. *Id.* at ¶ 40. As a result, Charter Club is in doubt as to its rights under the policy, including its right to seek appraisal of the loss. *Id.* at ¶¶ 46-47.

## ARGUMENT AND MEMORANDUM OF LAW

### I. CHARTER CLUB SUFFICIENTLY ALLEGES IT IS ENTITLED TO A DECLARATION OF ITS RIGHTS TO PROCEED TO APPRAISAL.

The Federal[2] Declaratory Judgment Act grants district courts with the power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. An essential element for every declaratory judgment action is the existence of an "actual controversy" between the parties, which exists when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

While "hypothetical" or "unripe" controversies are not enough, a court should permit a claim for declaratory judgment to proceed where declaratory relief would (1) "serve a useful purpose in clarifying and settling the legal relations in issue," and (2) "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *See Mt. Hawley*

---

[2] This Court's subject matter jurisdiction sounds in diversity, and federal law applies to procedural issues. *McMahon v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001). Lexington's reliance on Florida's Declaratory Judgment Act, as opposed to the Federal Declaratory Judgment Act, is therefore misplaced. *See Am. Ins. Co. v. Evercare Co.*, 2011 WL 2344147, *2 (11th Cir. June 15, 2011) ("the operation of the Declaratory Judgment Act is procedural only"); *Parkview Point Condo. Ass'n Inc. v. QBE Ins. Corp.*, No. 10-23731-CV, 2011 WL 13099890, at *3 (S.D. Fla. Sept. 9, 2011) (Florida's Declaratory Judgment Act inapplicable to diversity jurisdiction matter pending in federal court on the grounds that the statute is a "procedural mechanism"); *Coccaro v. Geico Gen. Ins. Co.*, 648 F. App'x 876, 880–81 (11th Cir. 2016) ("Florida's Declaratory Judgment Act, found in Chapter 86 of the Florida Statutes, is a procedural mechanism that confers subject matter jurisdiction on Florida's circuit and county courts; it does not confer any substantive rights.").

*Ins. Co. v. Tactic Security Enforcement, Inc.*, 252 F. Supp. 3d 1307, 1309 (M.D. Fla. 2017) (internal citations omitted). Under this framework, the threat of ongoing or future injury can also give rise to an immediate and ripe controversy allowing for a declaratory judgment. *Mallowney v. Fed. Collection Dep. Grp.*, 1993 F.3d 1342, 1346 (11th Cir. 1999).

A motion to dismiss a claim for declaratory judgment tests only whether the plaintiff has plausibly pled the factual basis for the declaration sought, not whether the plaintiff is ultimately entitled to the declaration sought. *Hartford Fire Ins. Co. v. Weathertrol Maint. Corp.*, No. 16-24509-CIV, 2017 WL 5643298, at *3 (S.D. Fla. Feb. 21, 2017) (Altonaga, J.).

    A. **CHARTER CLUB ALLEGES A REAL AND IMMEDIATE CONTROVERSY AND A DEFINITE THREAT OF ONGOING AND FUTURE INJURY.**

Lexington concedes, as it must, that Charter Club alleges the necessary elements for a declaration of rights to proceed to appraisal, but it asks the court to discount these allegations because they are purportedly "baseless" and "not entitled to the 'assumption of truth.'" D.E. 14 at 9. Lexington's request for the Court to weigh the credibility of Charter Club's well-pleaded allegations invites error.

Charter Club has pled that Charter Club and Lexington disagree as to the amount of Charter Club's loss, whether Charter Club breached any of the applicable post-loss conditions, and whether appraisal is appropriate. To wit:

- ➢ Lexington issued a commercial property policy to Charter Club, effective June 8, 2017 – June 8, 2018. *See* D.E. 1 at ¶ 11;
- ➢ Charter Club suffered a multi-million dollar loss due to Hurricane Irma and substantially complied with its post-loss obligations, including providing timely notice of the loss and making the damaged property available for inspection. *Id.* at ¶ 1;
- ➢ Pursuant to the policy, appraisal may be requested if Charter Club and Lexington "disagree on the value of the property or the amount of loss, either may request an appraisal of the loss, in writing. . . ." *Id.* at ¶ 17;

- ➢ On February 22, 2018, after completing its investigation of the loss, Lexington notified Charter Club in writing that there was covered damage to the building for $253,875 and that because such amounts fell below the policy's deductible no payment would be issued to Charter Club. *Id.* at ¶¶ 21, 22;

- ➢ On May 22, 2019, Charter Club's public adjuster provided Lexington with a competing and larger estimate of loss and corresponding supporting documentation. *Id.* at ¶ 25;

- ➢ From June 17 – June 20, 2019, Lexington's engineers, consultants, and adjusters inspected the property again and following these inspections Lexington obtained an engineering report and estimates of loss, ultimately concluding that Hurricane Irma did not cause part of the damages claimed by Charter Club through its May 22, 2019 estimate and scope of loss. *Id.* at ¶¶ 27-29;

- ➢ By letter dated February 13, 2020, Lexington requested for the first time (and more than two years after the date of loss) that Charter Club submit to an EUO on March 10, 2020. *Id.* at ¶ 33;

- ➢ Charter Club informed Lexington it was in the process of obtaining counsel, yet Lexington proceeded with an in-person EUO during the height of the COVID-19 global pandemic, to which a Charter Club representative was not present. *Id.* at ¶¶ 34-37;

- ➢ On April 7, 2020, Lexington denied coverage, claiming Charter Club's failure to appear for an EUO and provide certain documents requested of it constituted a breach of certain post-loss duties found in the policy. *Id.* at ¶ 38;

- ➢ On August 28, 2020, Charter Club requested that the claim be re-opened, offering to make itself available for an EUO and to make its books and records available for inspection. *In addition, Charter Club requested that the claim proceed to appraisal given the parties' dispute as to the amount of loss*. *Id.* at ¶39, Ex. B (emphasis added);

- ➢ On September 15, 2020, Lexington denied Charter Club's request to reopen its claim—thereby rejecting Charter Club's offer to sit for an EUO and make its books and records available for inspection as well as its request to proceed to appraisal—and reaffirmed its coverage denial. *Id.* at ¶ 40;

- ➢ Charter Club is in doubt as to its rights under the Policy, including its right to seek appraisal of the loss. . . . The parties disagree as to the amount of Charter Club's Hurricane Irma losses, such that appraisal is appropriate under the terms of Lexington's policy and Florida law. *Id.* at ¶¶ 46-47.

These allegations describe actual, ripe, and present controversies in need of judicial resolution via declaratory judgment. They also support and lead to numerous inferences that appraisal is ripe.

A demand for appraisal is ripe where the insurer has a reasonable opportunity to investigate and adjust the claim, and there is a disagreement regarding the value of the property or the amount

of loss. *See, e.g.*, *Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021, 1025 (Fla. 2002); *Am. Capital Assurance Corp. v. Leeward Bay at Tarpon Bay Condo. Ass'n, Inc.*, No. 2D20-165, 2020 WL 6478224, at *2 (Fla. 2d DCA Nov. 4, 2020).

First, by determining on February 22, 2018 that Charter Club suffered a covered loss valued by Lexington at $253,875, Lexington admits that the loss is at least partially covered under the policy. Second, there necessarily must have been an exchange of information amongst the parties for Lexington to reach this conclusion—unless Lexington takes the position that its coverage determination was the result of no investigation, which would be tantamount to a lack of good faith. *See e.g.*, *Brickell Harbour Condo. Ass'n, Inc. v. Hamilton Specialty Ins. Co.*, 256 So. 3d 245, 248 (Fla. 3d DCA 2018) (finding post-loss conditions satisfied where the parties engaged in a meaningful exchange of information). Third, Charter Club disagrees with Lexington's view of the amount of loss as evidenced by its competing estimate provided to Lexington on May 22, 2019.

Given the parties' disagreement, Charter Club requested that the claim proceed to appraisal and offered to make itself available for an EUO and produce requested books and records. *See* Compl., D.E. 1 at ¶ 39, Ex. B. Lexington rejected these offers by summarily denying coverage. *Id.* at ¶ 40. Therefore, a disagreement exists between the parties as to the amount of loss and whether appraisal may proceed under the policy. *Id.* at ¶ 47. Charter Club is in doubt as to its rights under the policy based on an actual, present, and ongoing dispute between the parties. *Id.* at ¶¶ 46- 47.

Lexington strangely argues the allegations in the complaint of a "disagreement" should be ignored, because Lexington *disputes* a disagreement can yet exist because according to Lexington, it has attempted to further investigate the claim. D.E. 14 at 9. But, Lexington ignores Charter Club's allegations in the complaint demonstrating Charter Club's efforts to provide Lexington with

8

the requested information, and Lexington's refusal to allow Charter Club to comply with the policy's post-loss conditions. *See* Compl. at ¶ 39, Ex. B.

Under analogous facts, Judge Rosenbaum held this conduct is the functional equivalent of a "disagreement" sufficient to trigger appraisal. *See 200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 10-61984-CIV, 2011 WL 2470344, at *13-15 (S.D. Fla. June 21, 2011). In *200 Leslie*, a condominium association filed a complaint, seeking in part a declaration that it was entitled to have its Hurricane Wilma loss resolved through appraisal. QBE argued the request for appraisal was deficient because—unlike Charter Club—the insured did not allege that QBE disagreed with the policyholder's position as to the amount of loss. The court rejected these arguments as disingenuous:

> QBE cannot simultaneously unilaterally preclude 200 Leslie's satisfaction of the 'disagreement' prerequisite by ignoring the demand letter and use 200 Leslie's alleged failure to demonstrate a 'disagreement' to bar suit permanently. . . . At some point in time, however, a complete failure to respond to 200 Leslie's contestation of QBE's valuation and to demand compliance with pre-appraisal obligations must act as an implicit 'disagreement' under the policy. Otherwise, insurers could always avoid appraisal by simply ignoring demands for appraisal. Thus, 200 Leslie's post-initial-Complaint but pre-Second-Amended-Complaint demand letter may have set the stage for the required 'disagreement' under the appraisal provision.

*Id.* at *14.

Charter Club has sufficiently alleged that there is an actual dispute amongst the parties. Nothing further is required to deny Lexington's motion.

### B. LEXINGTON IMPROPERLY CONFLATES ARTICLE III JUSTICIABILITY WITH THE MERITS OF CHARTER CLUB'S REQUEST FOR A DECLARATION OF ITS RIGHTS TO PROCEED TO APPRAISAL.

Lexington wastes a great deal of its motion arguing the merits of whether appraisal is ripe. But, "[i]t has long been well-accepted that the 'test for sufficiency of a complaint for declaratory judgment is not whether the plaintiff will succeed in obtaining the decree he seeks favoring his

9

position, but whether he is entitled to a declaration of rights at all.'" *Hartford Fire Ins. Co.*, No. 16-24509-CIV, 2017 WL 5643298, at *3 (internal citations omitted).

On the merits, Lexington knows appraisal is ripe under these circumstances because judges sitting on this Court have told it so. In *Palm Bay Yacht Club v. Lexington Insurance Co*, a condominium association submitted a claim for property damage to Lexington after Lexington concluded that no payment was due because the loss fell below the policy's deductible. No. 18-23888-CV, 2019 WL 1112278, at *1 (S.D. Fla. Feb. 6, 2019), *report and recommendation adopted*, No. 18-23888-CIV, 2019 WL 2255561 (S.D. Fla. Feb. 22, 2019). The insured submitted an estimate for loss of more than $20,000,000 and then less than a week later filed suit. More than a month after suit was filed, the insured demanded appraisal for the first time and subsequently asked the Court to enter an order directing the parties to proceed to appraisal.[3]

Lexington opposed the motion claiming in part that appraisal was premature, because the insured failed to satisfy its post-loss duties contained in the policy. Specifically, Lexington argued it was never given the opportunity to come to a coverage determination or otherwise investigate Palm Bay's claim in order to meaningfully assess whether there was a dispute as to the amount of loss.

---

[3] Lexington claims that because a demand for appraisal was neither made, nor denied, there is no current controversy as to whether appraisal is ripe. D.E. 14 at 12. The complaint and its attachments, however, allege appraisal was requested and rejected. *See* Compl. at ¶¶39-40, Ex. B. Regardless, a demand for appraisal does not need to be made prior to suit in order for a dispute over the amount of loss to be sent to appraisal. *See Palm Bay*, No. 18-23888-CV, 2019 WL 1112278, at *1; *Waterford Condo. Ass'n of Collier Cty., Inc. v. Empire Indem. Ins. Co.*, No. 2:19-CV-81-FTM-38NPM, 2019 WL 3852731, at *3 (M.D. Fla. Aug. 16, 2019), *reconsideration denied*, No. 2:19-CV-81-FTM-38NPM, 2019 WL 4861196 (M.D. Fla. Oct. 2, 2019) ("the policy does not say that filing a complaint cuts off appraisal rights, and the Court has consistently allowed insured parties to seek appraisal after demanding a jury trial.") (collecting cases).

Citing *Johnson v. Nationwide Mutual Insurance Co.*, 828 So. 2d 1021, 1022 (Fla. 2002), Magistrate Judge Torres reasoned that under Florida law appraisal is ripe "where an insurer admits that there is a covered loss, but there is a disagreement on the amount of loss." The court held these elements were satisfied by virtue of Lexington's position that (1) certain losses suffered at the property were covered under the policy, and (2) because the amount of loss fell below the deductible it would not issue payment. Magistrate Judge Torres also rejected Lexington's argument that the insured's supposed failure to comply with the policy's post-loss conditions barred appraisal. Because one purpose of post-loss condition compliance is to provide the insurer with the tools to determine the amount of loss, and Lexington had in fact made such a determination, appraisal was appropriate. *Palm Bay,* 2019 WL 1112278 at *4-5 ("contrary to the holding in *Romay*—the disagreement triggering the appraisal clause is not 'unilateral'; Lexington has made its coverage determination that some—but not all—of the damage associated with Hurricane Irma is covered under the policy.").

This Court's order in *Sabga v. Lexington Insurance Co.*, No. 12-21939-CIV, 2012 WL 13014709, at *1 (S.D. Fla. Aug. 2, 2012) is factually distinguishable. In *Sabga*, the insured failed to allege the parties disagreed as to the amount of loss, and Lexington (unlike here) admitted that if the loss was covered then appraisal was appropriate. *Id*. at *3 ("Lexington takes issue with the second prong of Plaintiffs' requested declaration—that, in the event the Court declares the loss is covered under the policy, '[Lexington] is required to submit to the . . . appraisal process *if [Lexington] disagrees with [Plaintiffs'] evaluation of the amount of loss. . . . Lexington admits that appraisal would be proper if a court finds the existence of insurance coverage*.") (emphasis added). Charter Club alleges there is a disagreement as to the amount of loss, that it has requested

11

appraisal, and that Lexington has refused to proceed to appraisal. Unlike *Sabga*, the dispute here is concrete and not based on a contingent or hypothetical scenario.

Lexington claims that "[c]ourts have made clear that a request for a declaration compelling appraisal must be dismissed when that request is contingent on the court first determining that the plaintiff is entitled to coverage." D.E. 14 at 11. But, Lexington admits Charter Club suffered loss caused by Hurricane Irma; it previously determined that the loss is covered, but falls below the policy's deductible. *See* D.E. 1 at ¶ 22. Instead, Lexington now accuses Charter Club of breaching its post-loss obligations by failing to sit for a unilaterally scheduled EUO and failing to produce documents, while also accusing Charter Club of breaching the policy's cooperation clause. These are classic "defenses to coverage that otherwise exists" under Florida law. As the court in *Axis Surplus Ins. Co. v. Caribbean Beach Ass'n, Inc.*, 164 So. 3d 684, 687 (Fla. 2d DCA 2014) explained, the cooperation clause is a "forfeiture provision," because "[i]t outlines neither the covered scope of loss nor dollar limits of coverage; rather, it imposes post-loss procedural requirements with which the insured must comply to receive payment for existing coverage." *Id.*

None of the authority cited by Lexington holds that a dispute as to whether a party may proceed to appraisal should be dismissed where coverage has otherwise been found, but the claim denied due to the insurer's belated application of a *forfeiture* provision. *See Oriole Gardens Condo. Ass'n I v. Aspen Spec. Ins. Co*, No. 11-62281-CV, 2011 WL 6754055, at *1 (S.D. Fla. Dec. 23, 2011) (claim was denied in its entirety due to an exclusion for wear and tear); *Corzo v. Am. Sup. Ins. Co.*, 847 So. 2d 584, 585 (Fla. 3d DCA 2003) (denial of claim due to exclusion); *Sabga*, 2012 WL 13014709 at *1 (denial of claim due to plumbing and maintenance exclusions); *Johnson*, 828 So. 2d at 1023 (denial of coverage based on exclusion for earth movement); *Fla. Ins. Guar. Ass'n v. Santos*, 148 So. 3d 837 (Fla. 5th DCA 2014) (denial of coverage for sinkhole claim; an

excluded cause of loss); *Landmark American Ins. Co. v. Hacienda Village Homeowners Ass'n, Inc.*, 2008 WL 4371325 (M.D. Fla. 2008) (denial of coverage where plaintiff had no insurable interest); *Gonzalez v. State Farm Fire & Cas. Co.,* 805 So. 2d 814 (3d DCA 2000) (denial of coverage due to settling exclusion).

In fact, courts in Florida routinely exercise jurisdiction over declaratory judgment actions seeking a determination of whether appraisal is ripe where an insurer has not wholly denied coverage due to an exclusion or limitation, but has instead claimed that appraisal is not ripe due to an insured's failure to comply with post-loss conditions. Even where there has been a denial of coverage due to an exclusion or limitation, the majority of Florida courts recognize that the trial court has wide discretion over the timing of appraisal. *See, e.g.*, *Leeward Bay at Tarpon Bay Condo. Ass'n, Inc.*, 2020 WL 6478224, at *2 (holding it is within the trial court's discretion to send a claim to appraisal prior to resolving a coverage dispute, and indeed that doing so is the *preferred* course); *Waterford Condo. Ass'n of Collier Cty., Inc.*, 2019 WL 4861196, at *1.[4]

For example, in *Citizens Property Insurance Corp. v. Admiralty House, Inc.*, 66 So. 3d 342, 343 (Fla. 2d DCA 2011), Citizens determined that a Hurricane Wilma loss fell below the policy's deductible, the insured submitted a supplemental claim for damages, and Citizens issued partial payment. *Id.* The insured disagreed with the partial payment, hired a public adjuster, and requested that Citizens reopen the claim. Citizens requested the insured submit a proof of loss, submit to an EUO, and make its books and records available for inspection. *Id.*

---

4 This discretion exists in part due to the nature of the appraisal remedy. Appraisal conserves considerable resources by ensuring that the parties can take advantage of a "swift and informal decision as to the amount of the disputed loss." *See Palm Bay*, 2019 WL 1112278, at * 3; *MKL Enterprises LLC v. Am. Traditions Ins. Co.*, 265 So. 3d 730, 731 (Fla. 1st DCA 2019) ("Generally, '[a]ppraisal clauses are preferred, as they provide a mechanism for prompt resolution of claims. . . .'").

13

Citizens ultimately denied the claim, asserting the insured failed to comply the policy's post-loss conditions. *Id.* The insured filed a two-count complaint for breach of contract *and declaratory judgment* to determine whether the insured had a right to demand appraisal under the policy. *Id.* The lower court entered an order-compelling appraisal, but failed to resolve issues of fact as to whether there had been post-loss compliance. On appeal, the Second District found error in the trial court's failure to make a determination of whether the insured complied with its post-loss duties, but it held that "[o]nce the trial court determines that a demand for appraisal is ripe, the court has discretion to control the order in which appraisal and coverage determinations proceed." *Id.* at 344.

## II. CHARTER CLUB'S REQUEST FOR DECLARATORY RELIEF MAY BE USED AS PREDICATE FOR FURTHER RELIEF, INCLUDING SPECIFIC PERFORMANCE.

Finally, Lexington sets up a straw man by arguing Charter Club improperly seeks to compel appraisal through a declaratory judgment action, which amounts to a request for specific performance that has not been sufficiently pled in the complaint. *See* D.E. 14 at 12.

Charter Club, however, has alleged that it is "in doubt as to its rights under the Policy, including its right to seek appraisal of the loss," [D.E. 1 at ¶ 46] and requests that the court enter a declaration that the policy requires the parties to proceed to appraisal. *Id.* at 10. A declaratory judgment can be used as a predicate for "further necessary or proper relief" after "reasonable notice and hearing," including equitable relief such as specific performance. *See* 28 USC § 2202.

Under similar reasoning, Judge Badalamenti rejected an identical argument on an insurer's motion to dismiss in *Creekside Crossing Condominium Association Inc. v. Empire Indemnity Insurance Co.*, No. 220CV00136JLBMRM, 2020 WL 5973177, at *3 (M.D. Fla. Sept. 2, 2020). The insurer argued the insured's cause of action for declaratory relief improperly sought injunctive relief (like specific performance, an equitable remedy) without setting forth the necessary elements

for an injunction. *Id.* The court disagreed, holding it was proper for the court to address the insured's claim for declaratory relief independently of any potential injunctive relief, holding: "if the Court rules in the Association's favor and [the insurer] still refuses to engage in the appraisal process, then supplemental relief under 28 USC 2202—including an injunction—may be appropriate." *Id.*

## CONCLUSION

Charter Club plausibly alleges the existence of an actual controversy between it and Lexington as to whether appraisal is appropriate. For this reason and those set forth above, Lexington's motion to dismiss should be denied.

Dated this 11th day of December 2020.

Respectfully submitted,

*/s/ Camilla J. Cohen*
**Matthew B. Weaver**
Florida Bar No. 42858
mweaver@reedsmith.com
iromero@reedsmith.com
**Camilla J. Cohen**
Florida Bar No. 106899
ccohen@reedsmith.com
iromero@reedsmith.com

*Counsel for Plaintiff*

CASE NO. 20-24148-CIV-ALTONAGA/TORRES

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 11th, 2020, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified below via transmission of Notice of Electronic Filing generated by CM/ECF.

/s/ *Camilla J. Cohen*
**Camilla J. Cohen**

## SERVICE LIST

Perry Goodman (Fla. Bar No. 50778)
pgoodman@moundcotton.com
**MOUND COTTON WOLLAN & GREENGRASS LLP**
110 East Broward Boulevard, Suite 1580
Fort Lauderdale, FL 33301
Tel. (954) 467-5800
Fax (954) 467-5880

Eric Krejci *(admitted pro hac vice)*
ekrejci@moundcotton.com
**MOUND COTTON WOLLAN & GREENGRASS LLP**
One New York Plaza
44th Floor
New York, New York 10004

*Counsel for Defendant,*
*Lexington Insurance Company*